IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:20-cv-00543-MR

| | |
|---|---|
| JAMES ALFRED FUTRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ROY COOPER, et al., ) | **ORDER** |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of the Amended Complaint [Doc. 12]. Plaintiff is proceeding *in forma pauperis*. [Doc. 7].

**I.  BACKGROUND**

The *pro se* Plaintiff, who is presently incarcerated at the Catawba Correctional Center ("Catawba C.C."), filed this civil rights action pursuant to 42 U.S.C. § 1983 complaining about several transfers and prison conditions that occurred during the COVID-19 pandemic. [Doc. 1].

On April 2, 2021, the Court conducted an initial review of the Plaintiff's Complaint and concluded that the Plaintiff had failed to state a claim upon which relief could be granted. [Doc. 11]. The Court gave the Plaintiff thirty (30) days to file an amended complaint addressing the deficiencies identified

by the Court. The Plaintiff filed his Amended Complaint on April 26, 2021. [Doc. 12].[1] The Amended Complaint is therefore ripe for initial review.

In his Amended Complaint, the Plaintiff reasserts his § 1983 claims based on his transfers between prisons and the general prison conditions that occurred during the COVID-19 pandemic. [Id.]. He names as Defendants in their official capacities: Roy Cooper, the North Carolina governor; Erik Hooks, the secretary of the North Carolina Department of Public Safety ("NCDPS"); and Bill Fowler, Eric Montgomery, Angela Bryant, and Graham Atkinson, post-release supervision and parole commissioners. [Id.]. The Plaintiff seeks injunctive relief, immediate release from NCDPS,[2] and compensatory and punitive damages. [Id. at 21-22].

## II. STANDARD OF REVIEW

Because the Plaintiff is proceeding *in forma pauperis*, the Court must review the Amended Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against

---

[1] The Plaintiff's Amended Complaint is considered to be filed on the date that he delivered the pleading to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988); Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735 (4th Cir. 1991) (applying Houston to § 1983 actions).

[2] The Court cannot modify the terms of the Plaintiff's confinement in his state criminal proceedings. Such relief is not available in suits brought pursuant to § 1983 in federal court. See generally Preiser v. Rodriguez, 411 U.S. 475 (1973).

a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether the Amened Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. Parties

The body of the Amended Complaint refers to individuals who are not named as Defendants in the caption as required by the Federal Rule of Civil

Procedure 10(a). Such claims are nullities and they are dismissed without prejudice. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the complaint but who were served).

The Amended Complaint also refers to individuals besides the Plaintiff who have allegedly experienced harmful prison conditions during COVID-19. However, the Plaintiff's status as a *pro se* prisoner precludes him from making claims on behalf of others. See Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). Therefore, to the extent that the Plaintiff attempts to assert claims on behalf of others, such claims are dismissed.

### B. Official Capacity Claims

The Plaintiff purports to sue the Defendants, who are all state officials, only in their official capacities. [Doc. 12 at 2-3]. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages

4

thereunder. Allen v. Cooper, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, the Plaintiff's claims for damages do not survive initial review and will be dismissed.

**C.     Eighth Amendment**

The Plaintiff alleges that his transfers among NCDPS facilities during the COVID-19 pandemic and the conditions of confinement at Catawba C.C. subject him to unreasonably dangerous conditions in violation of the Eighth Amedment. [Doc. 12 at 14-20].

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Extreme deprivations are required, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992). A plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 847 (1994). A plaintiff must also allege "a serious or significant

5

physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993).

The Plaintiff expresses his general dissatisfaction with NCDPS's handling of the COVID-19 pandemic. However, he has failed to plausibly allege that the prison transfers and housing conditions that he is experiencing are sufficiently serious, or that the Defendants have acted with deliberate indifference.

Several of the Plaintiff's allegations of deliberate indifference are self-defeating. For instance, while the Plaintiff disagrees with prison officials' decision to transfer him twice without first testing him for COVID-19, he admits that he was quarantined for each transfer and that testing has now been implemented. [See Doc. 12 at 24]. The Plaintiff also disagrees with the handling of a COVID-19 exposure in the kitchen, yet he admits that the exposed kitchen workers were quarantined and that substitute workers were brought into the prison. [Id. at 17, 20].

The Plaintiff's other allegations also fail to plausibly demonstrate deliberate indifference. He complains that: prison staff come and go from the prison;[3] the ventilation systems are not adequately separated for

---

[3] Any suggestion that the prison staff should remain at the prison for the duration of the pandemic is, of course, frivolous.

quarantined and non-quarantined inmates; and six feet of social distancing space is not present between bunks. [Doc. 12 at 11, 12]. "[T]he inability … to practice social distancing at all times does not, without more, demonstrate that defendants have deliberately disregarded these risks."[4] Duvall v. Hogan, 2020 WL 3402301, at *13–14 (D. Md. June 19, 2020); Swain v. Junior, 961 F.3d 1276, 1287 (11th Cir. 2020) ("Failing to do the 'impossible' doesn't evince indifference, let alone deliberate indifference."). To the extent that isolated lapses in implementing safety provision occurred, the Plaintiff has failed to explain how these were the result of deliberate indifference. Reinhardt v. Hogan, 2021 WL 82894, at *6 (D. Md. Jan. 11, 2021) ("the Eighth Amendment is not violated when every conceivable protective measure is put into place to prevent the spread of a contagious disease and there are isolated lapses in implementation that cause no injuries."). The Plaintiff's allegations that the Defendants failed to provide the most optimal possible conditions of incarceration during the COVID-19 pandemic is insufficient to state a plausible § 1983 claim. See generally Daniels v.

---

[4] The CDC has acknowledged that social distancing strategies "will need to be tailored to the individual space in the facility" and that "[n]ot all strategies will be feasible in all facilities." See https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html#previous-updates (last visited July 26, 2021).

7

Williams, 474 U.S. 327, 328 (1986) (claims of negligence are the province of state law and do not support a constitutional claim).

Moreover, the Plaintiff has failed to plausibly allege that the Defendants caused any serious or significant physical or emotional injury. The Plaintiff does not allege that he has sustained any physical injury whatsoever. His generalized allegations of "misery, anxiety, and depression" [Doc. 12 at 20] are shared by many incarcerated and non-incarcerated individuals alike during this unprecedented pandemic. They are, however, inadequate to demonstrate that the Defendants' actions or inactions caused him any serious or significant mental injury for purposes of the Eighth Amendment. See Strickler, 989 F.2d at 1380 and n.4 (there must be evidence of a "*serious medical or emotional* deterioration" that is attributable to the challenged condition; general allegations of mental stress are insufficient).

The Plaintiff has failed to allege any facts stating a plausible claim that the Defendants violated his Eighth Amendment rights. Therefore, this claim will be dismissed as frivolous and for failure to state a claim upon which relief can be granted.

### D. Fourteenth Amendment

The Plaintiff alleges that his prison transfers and the prison conditions to which he was subjected violate his rights to due process under the Fourteenth Amendment. [Doc. 12 at 20]. He also alleges that he was denied participation in the Extended Limits of Confinement ("ELC")[5] program in violation of his due process rights. [Id. at 12].

The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. Prisoners do not have a liberty interest in any particular housing assignment unless it imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

The Plaintiff's conclusory allegations that two transfers within NCDPS and the conditions at Catawba C.C. may lead to his torture and death by way of COVID-19 infection are too speculative to support a § 1983 due process claim. The facts that he was transferred twice during the pandemic despite

---

[5] See https://www.ncdps.gov/new-extended-limits-confinement-program#:~:text=To%20be%20considered%20for%20Extended,review%20does%20not%20guarantee%20participation (last visited July 26, 2021).

his wishes, and that his incarceration happens to coincide with a pandemic, fail to plausibly allege that the Defendants have deprived him of due process in any way.

To the extent that the Plaintiff suggests that he should be permitted to serve his remaining sentence outside of prison under the ELC program, this too fails to state a § 1983 claim. The Plaintiff has no vested interest in being granted participation in the ELC, and therefore, whether Defendant Hooks will consider him for the program and/or grant him participation has no constitutional implications whatsoever. See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation").

Therefore, the Plaintiff's Fourteenth Amendment claim will be dismissed for failure to state a claim upon which relief can be granted.

**E. Grievances**

The Plaintiff appears to allege that his grievances addressing transfers and prison conditions during COVID-19 were improperly rejected and denied. [Doc. 12 at 14-15].

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 885 F.3d 533, 541 (4th Cir. 2017). The Plaintiff's allegation that he submitted grievances that went unanswered or were rejected fails to rise to the level of a constitutional violation. Therefore, the Plaintiff's claims directed to his prison grievances will be dismissed for failure to state a claim.

### F. Supplemental Jurisdiction

The Plaintiff additionally asks the Court to enforce a state court injunction[6] and Defendant Cooper's executive orders pertaining to the COVID-19 pandemic. [Doc. 12 at 21-22].

The district courts have supplemental jurisdiction over claims that are so related to the claims over which the court has original jurisdiction that they "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see Artis v. D.C., 138 S.Ct. 594 (2018) (included within this supplemental jurisdiction are state claims

---

[6] The Plaintiff appears to refer to the June 16, 2020 preliminary injunction and February 25, 2021 settlement agreement entered by the Wake County General Court of Justice, Superior Court Division, in N.A.A.C.P. v. Cooper, Case No. 20CVS500110. [See Doc. 12 at 19].

brought along with federal claims arising from the same episode). A court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c)(1)-(4).

The Plaintiff's allegations about the state court injunction and executive orders are far from the model of clarity. Further, no federal claim has passed initial review so the Court would decline to exercise supplemental jurisdiction at this time even if the Plaintiff had stated a facially sufficient claim under North Carolina law.

## IV. CONCLUSION

In sum, Plaintiff has failed to state a claim against any Defendant, and therefore, the Amended Complaint will be dismissed.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Amended Complaint is dismissed as frivolous, for failure to state a claim upon which relief can be granted, and for seeking damages from immune parties pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

The Clerk is respectfully instructed to close this case.

**IT IS SO ORDERED**.

Signed: July 28, 2021

Martin Reidinger
Chief United States District Judge